# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**Todd Blais,**

*Plaintiff,*

v.

**Bilateral Credit Corp, LLC,**

*Defendant.*

Case No: _____

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Todd Blais** ("**Mr. Blais**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Bilateral Credit Corp, LLC** ("**Bilateral**" or the "**Defendant**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Mr. Blais against Bilateral for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**"), the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and the *Florida Consumer Collection Practices Act*, § 559.55, Fla. Stat., *et seq.* ("**FCCPA**").

### JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction for Mr. Blais' state law claims under the FCCPA pursuant to 28 U.S.C. § 1367.

4. Bilateral is subject to the provisions of the FCRA, the FDCPA, and the FCCPA, and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat., and Fed. R. Civ. P. 4(k).

5. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES
### Mr. Blais

6. **Mr. Blais** is a natural person residing in Palm Harbor, Pinellas County, Florida.

7. Mr. Blais is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, § 559.55(8), Fla. Stat.

### Bilateral

8. **Bilateral** is a Delaware limited liability company with a principal business address of **1980 Pawtucket Avenue, Suite 2-1, East Providence, RI 02914**.

9. Bilateral is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company**, **1201 Hays Street, Tallahassee, FL 32301**.

10. Bilateral is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, § 559.55(7), Fla. Stat., in that it uses an instrumentality of interstate commerce, including postal mail and the internet, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

11. Bilateral is licensed as a *Consumer Collection Agency* ("**CCA**") by the Florida Office of Financial Regulation, bearing license number CCA9901338.

12. As a licensed CCA, Bilateral knows, or should know, the requirements of the FDCPA and the FCCPA.

## FACTUAL ALLEGATIONS

### The Alleged Debt

13. Mr. Blais previously worked for Accenture; while employed there, he was provided an American Express credit card to use for company business.

14. Mr. Blais was required to repay any personal charges made to the card himself.

15. Between August and December of 2018, a large number of personal consumer charges were made to the account, including to restaurants, grocery stores, gas stations, and similar.

16. Allegedly, around December 2018, a payment Mr. Blais made to American Express to cover his personal consumer charges was returned unpaid by his bank.

17. By May 2019, at the latest, Accenture paid the charges to American Express and demanded $5,080 from Mr. Blais, who had, at that point, moved on to other employment (the "**Debt**" or "**alleged Debt**").

18. Mr. Blais disputes owing the alleged Debt.

19. Nonetheless, the alleged Debt arose from goods and services which were primarily for family, personal, or household purposes, and it therefore meets the definitions of *Debt* under the FDCPA, 15 U.S.C. §1692a(5), and the FCCPA, § 559.55(6), Fla. Stat.

20. In August 2020, Accenture placed the Debt for collection with Bilateral.

21. Bilateral thereafter began reporting the Debt, monthly, to Trans Union, one of the three major *Consumer Credit Reporting Agencies* ("**CRAs**"). **SEE PLAINTIFF'S EXHIBIT A.**

22. Bilateral reported the Date of First Delinquency ("DOFD") to Trans Union as August 2020 – *i.e.*, Bilateral alleged that the Debt had first become delinquent in August 2020, the same date it received the Debt for collection.

23.  While Trans Union does not disclose the reported DOFD to consumers in consumer disclosures, it can nonetheless be easily inferred from the "estimated month and year this item will be removed."

24.  Bilateral's tradeline shows July 2027 as the "estimated month and year this item will be removed." *Id.*

25.  Trans Union purges tradelines at 6 years and 11 months in order to comply with the FCRA, 15 U.S.C. § 1681c(a)(4), which requires deletion of information 7 years old or more, other than in certain specific instances, inapplicable to the instant matter.

26.  Thus, a purge date of July 2027 corresponds to a reported DOFD of August 2020.

27.  The *Credit Reporting Resource Guide*, published by the Consumer Data Industry Association ("**CDIA**"), a trade association representing the CRAs, including Equifax, Experian, and Trans Union, instructs debt collectors like Bilateral to report a DOFD as the date the debt first became delinquent with the original creditor – not the date it was placed for collection.

28.  Bilateral's false reporting effectively re-aged the Debt, making it appear as if it was more recent.

29.  "When a trade line is improperly re-aged so that it expires after the seven-year time limit has run, (*e.g.*, a trade line that would properly expire in 2018, is set to expire in 2020) there is a real risk that the individual will be harmed, in the

form of a lower credit score." *O'Dell v. National Recovery Agency*, Civil Action No. 16-5211, (E.D. Penn. 2018) (finding that the re-aging of debt via a false DOFD creates a real risk of harm sufficient to create standing to bring claim).

30. CRAs like Trans Union use a data furnisher's DOFD to comply with and compute the running of the seven-year reporting period prescribed by the FCRA, 15 U.S.C. § 1681c(a)(4).

31. Thus, when Bilateral reported the Debt with a falsely stated, more recent DOFD, the tradeline will continue to appear for longer than it should.

32. Additionally, the vast majority of consumer credit scores heavily weigh the recency of the DOFD when computing a consumer's credit score; the more recent the DOFD, the more adversely the account impacts the consumer's score.

33. Bilateral thus cased a material adverse impact on Mr. Blais' credit scores by falsely reporting the DOFD.

34. Mr. Blais has therefore been wrongfully denied other credit opportunities.

35. On information and belief, Bilateral frequently reports DOFDs to Trans Union as the date it received the debt for collection, not the date it originally went past due – resulting, as in the instant matter, of the reporting of a large number of consumers' debts as much more recent than what actually transpired.

## Mr. Blais' Disputes of the Debt

36.     Around October 11, 2023, Mr. Blais disputed Bilateral's tradeline with Trans Union, stating the dates of the account were inaccurately reported and that he disputed owning the Debt.

37.     Trans Union, upon receipt of Mr. Blais' dispute, sent Bilateral an *Automated Consumer Dispute Verification* Request ("**ACDV**") through an online platform known as e-OSCAR, asking Bilateral to make a reasonable investigation into the dispute.

38.     Bilateral, in response to Mr. Blais' dispute, responded to the ACDV that the accuracy of the reported information was verified as accurate and required no update, modification, or deletion. **SEE PLAINTIFF'S EXHIBIT B.**

39.     Bilateral failed to modify its report to indicate the actual DOFD of May 2019, and it also failed to modify its reporting to indicate that the Debt was disputed. *Id.*

40.     To report an account as "disputed by consumer," a data furnisher like Bilateral can ensure notice of dispute is included in its reporting simply by reporting a "compliance condition code" ("CCC"). For example, reporting a CCC of "XB" (shorthand for "consumer disputes account information") tells the CRAs to include notice of dispute in any reports sold containing the disputed data.

41. The failure to update a report to indicate that a debt is disputed can, in and of itself, violate the FCRA. *See Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008).

42. Many consumer credit scores, including most versions of FICO, will disregard a collection tradeline if the "XB" compliance condition code is reported by the data furnisher.

43. Thus, Bilateral's failure to include notice of dispute in its report severely and adversely affected Mr. Blais' credit scores

44. Further, if a data furnisher like Bilateral decides to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Management, Inc.*, 827 F.3d 1295 (11th Cir. 2016).

45. No evidence exists to support the conclusion that Bilateral's data was true. As such, Bilateral could not have possibly obtained any, much less sufficient evidence, to support that its report was accurate since Accenture's own spreadsheet of charges relating to the Debt showed it alleged payment due from Mr. Blais since May 2019. Moreover, no evidence could have existed to support the notion that Mr. Blais did not dispute Bilateral's report.

46. In November 2023, Bilateral made a new report to Trans Union, realleging the Debt and communicating new, updated information to Trans Union.

47. Despite knowing the Debt was disputed, Bilateral failed to disclose in its reporting that the Debt was disputed.

48. Directly because of this, Bilateral's tradeline appeared on Mr. Blais' credit report, *sans* notice of dispute.

49. Trans Union then sold reports concerning Mr. Blais to third parties which contained the disputed information without any indication to the reader of the report that the Debt was disputed.

50. Mr. Blais disputed Bilateral's tradeline again around December 5, 2023. Bilateral responded to the second ACDV sent by Trans Union, confirming its information was accurate and required no change, update or modification.

51. A third dispute around December 11, 2023 resulted in Bilateral confirming the information as accurate the following day, without any change, update or modification.

52. Mr. Blais has suffered from emotional distress in attempting to dispute Bilateral's inaccurate reporting and has further suffered damage to his reputation, embarrassment, and has incurred damages in expending time and resources to find and procure counsel.

53. Mr. Blais has hired the aforementioned law firm to represent him in this matter has assigned his right to fees and costs to such firm.

## COUNT I
## WILLFUL VIOLATION OF THE FCRA
## 15 U.S.C. § 1681s-2(b)

54. Mr. Blais adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

55. Bilateral violated **15 U.S.C. § 1681s-2(b)** on three separate occasions when it failed to update, modify, or correct its reports after receiving notice of dispute from Trans Union. Any reasonable investigation would have concluded the information Bilateral reported concerning the purported debt could not be verified as accurate since, amongst other issues, the DOFD was falsely reported as August 2020, a fact Bilateral knew to be false and which "re-aged" the Debt. Bilateral did not so much as update its report to reflect that the Debt was "disputed."

56. Bilateral's conduct was willful and intentional, or alternately, was done with a reckless regard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Blais. Indeed, Bilateral was intentionally and actively trying to harm Mr. Blais, by holding his credit report hostage to get him to pay a disputed debt he did not owe.

57. As a result of its conduct, Bilateral is liable to Mr. Blais pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Blais respectfully requests this Honorable Court enter judgment against Bilateral for:

a. The greater of statutory damages of **$1,000.00** per incident or Mr. Blais' actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(A).

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

c. Such other relief that this Court deems just and proper

## COUNT II
## NEGLIGENT VIOLATION OF THE FCRA
## 15 U.S.C. § 1681s-2(b)
### PLED IN THE ALTERNATIVE TO COUNT I

58. Mr. Blais adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

59. Bilateral violated **15 U.S.C. § 1681s-2(b)** on three separate occasions when it failed to update, modify, or correct its reports after receiving notice of dispute from Trans Union. Any reasonable investigation would have concluded the information Bilateral reported concerning the purported debt could not be verified as accurate since, amongst other issues, the DOFD was falsely reported as August 2020, a fact Bilateral knew to be false and which "re-aged" the Debt.

Bilateral did not so much as update its report to reflect that the Debt was "disputed."

60. Bilateral's conduct, action, and inaction was the result of negligence.

**WHEREFORE,** Mr. Blais respectfully requests this Honorable Court enter judgment against Bilateral for:

a. Mr. Blais' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper

## COUNT III
## VIOLATIONS OF THE FDCPA
## 15 U.S.C. § 1692e

61. Mr. Blais adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

62. Bilateral violated **15 U.S.C. § 1692e** when it reported to Trans Union a collection account allegedly owed by Mr. Blais to Accenture, claiming the DOFD was August 2020 when Bilateral knew this was false, and documentation in possession of Bilateral further corroborated this. Bilateral then verified its reported information as "accurate" despite multiple disputes.

63. Bilateral's actions render it liable for the above-stated violations of the FDCPA, and Mr. Blais is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

64. Bilateral's actions caused Mr. Blais to suffer damages to his credit report and scores, as well as emotional distress in having to deal with an account damaging his credit for which he had no liability.

**WHEREFORE,** Mr. Blais respectfully requests this Honorable Court enter judgment against Bilateral for:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. §1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF THE FDCPA
## 15 U.S.C. § 1692e(8)

65. Mr. Blais adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

66. Bilateral violated **15 U.S.C. § 1692e(8)** when it communicated credit information which was false, and should have been known to be false, to Trans Union.

67. Bilateral violated **15 U.S.C. § 1692e(8)** when it communicated credit information known to be disputed without disclosure of dispute.

68. Bilateral's actions render it liable for the above-stated violations of the FDCPA, and Mr. Blais is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

69. Bilateral's actions caused Mr. Blais to suffer damages to his credit report and scores, as well as emotional distress in having to deal with an account damaging his credit for which he had no liability.

**WHEREFORE,** Mr. Blais respectfully requests this Honorable Court enter judgment against Bilateral for:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. §1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

### COUNT V
### VIOLATIONS OF THE FDCPA
### 15 U.S.C. § 1692e(10)

70. Mr. Blais adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

71. Bilateral violated **15 U.S.C. § 1692e(10)** when it reported to Trans Union a collection account allegedly owed by Mr. Blais to Accenture, claiming the DOFD was August 2020 when Bilateral knew this was false, and documentation

in possession of Bilateral further corroborated this. Bilateral then verified its reported information as "accurate" despite multiple disputes.

72. Bilateral's actions render it liable for the above-stated violations of the FDCPA, and Mr. Blais is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

73. Bilateral's actions caused Mr. Blais to suffer damages to his credit report and scores, as well as emotional distress in having to deal with an account damaging his credit for which he had no liability.

**WHEREFORE,** Mr. Blais respectfully requests this Honorable Court enter judgment against Bilateral for:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. §1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT VI
## VIOLATIONS OF THE FCCPA, § 559.72(6), FLA. STAT.
## § 559.72(6), Fla. Stat.

74. Mr. Blais adopts and incorporates paragraphs 1 – 53 as if fully stated herein.

75. Bilateral violated **§ 559.72(6), Fla. Stat.**, when Bilateral disclosed a debt which it knew to be disputed without disclosure of dispute.

76. Bilateral made its reports to Trans Union with malice, in an attempt to intentionally harm Mr. Blais.

77. "Malice can be established by evidence showing the defendant made a false statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Long v. Pendrick Capital Partners II, LLC*, Case No.: GJH-17-1955 (D. Md. Mar. 18, 2019) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 270-80 (1964) ("A jury could conclude that (Defendant) acted with reckless disregard for the truth when it initially furnished data about the disputed Emcare debt to the CRAs and when it verified the debt more than once. Plaintiff put (Defendant) on notice that she was not responsible for the Emcare debt, yet (Defendant) reported the debt anyway.")

78. As such, Bilateral is liable for the above-stated violations of the FCCPA, and Mr. Blais is thereby entitled to statutory damages not to exceed $1,000, plus costs and attorneys' fees.

**WHEREFORE,** Mr. Blais respectfully requests that this Honorable Court enter judgment against Bilateral for:

    a. Statutory damages of $1,000 pursuant to § 559.77(2), Fla. Stat.;

    b. Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to § 559.77(2), Fla. Stat.;

    c.    Injunctive relief prohibiting Bilateral from trying to collect the alleged debt from Mr. Blais;

    d.    Reasonable costs and attorneys' fees pursuant to § 559.77(2), Fla. Stat.; and

    e.    Such other relief that this Court deems just and proper

## DEMAND FOR JURY TRIAL

Mr. Blais hereby demands a jury trial on all issues so triable.

Respectfully submitted on January 10, 2024, by:

**SERAPH LEGAL, P.A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@SeraphLegal.com
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

**ATTACHED EXHIBIT LIST**
A    Mr. Blais' Trans Union Consumer Disclosure, December 5, 2023, Bilateral Tradeline - Excerpt
B    Trans Union's Dispute Results to Mr. Blais, October 13, 2023